Brian N. Spector - 010112
**SCHNEIDER & ONOFRY, P.C.**
365 E. Coronado Road
Phoenix, Arizona 85004
Telephone: (602) 200-1295
Fax: (602) 230-8985
E-mail: minute-entries@soarizonalaw.com
bspector@soarizonalaw.com
Attorneys for Debtors Barsano

# IN THE UNITED STATES BANKRUPTCY COURT

# IN AND FOR THE DISTRICT OF ARIZONA

| In Re:<br><br>COOLTRADE, INC.<br><br>EDWARD J. BARSANO AND JEANNE BARSANO,<br><br>Debtors.<br><br>This filing Applies to:<br>☐ Both Debtors<br>☐ CoolTrade, Inc., only<br>☒ Barsano, only | Chapter 11<br><br>No. 2:17-bk-11886-BKM<br><br>No. 2:17-bk-11887-BKM<br><br>(Jointly Administered)<br><br>**CHAPTER 11 PLAN OF LIQUIDATION DATED MARCH 28, 2019** |
|---|---|

## INTRODUCTION

Debtors Edward and Jeanne Barsano (the "**Barsanos**")**,** who filed a petition for Chapter 11 relief on October 6, 2017 (the "Petition Date") are the "Proponents" (also sometimes referred to herein as the "**Debtors**") of the following Plan of Liquidation ("Plan"). All creditors and parties in interest should refer to the Disclosure Statement sent along with this Plan for a discussion of the Debtors' history, assets, and a summary and analysis of the Plan and related matters. All creditors are encouraged to read the Plan, the Disclosure Statement and the related materials in their entirety before voting to accept or reject the Plan.

Subject to the restrictions on modifications set forth in § 1127 of the Bankruptcy Code, Bankruptcy Rule 3019, and the Plan, the Debtors expressly reserve the right to alter, amend, modify or revoke this Plan, one or more times, before the Plan's substantial consummation.

For Definitions, Rules of Construction, and Computation of Time, see Article 7 of the Plan.

## ARTICLE I
## DESCRIPTION OF ADMINISTRATIVE AND PRIORITY CLAIMS

1.1 <u>Priority Tax Claims</u>. This class consists of any Allowed Claims of the State of Arizona and/or the IRS. Allowed Priority Tax Claims will be paid prior to any payments to unsecured creditors.

1.2 <u>Post Confirmation Professional Fees</u>. Professional fees for services rendered in connection with the Chapter 11 case and the Plan after the Confirmation Date shall be paid without the need for application or Bankruptcy Court authorization.

## ARTICLE II
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

2.1 Classification and Treatment of Claims and Interests

**Class 1: Administrative Expense Claims.**

<u>Description of Class 1 Claims</u>. Class 1 Administrative Expenses will consist of any unpaid (1) attorneys' fees and costs owing to Schneider & Onofry, P.C.("S&O"); (2) other professional fees to be paid to any other professionals retained; (3) postpetition capital gains taxes or other income taxes accruing prior to entry of the Confirmation Order and any such taxes accruing thereafter as a result of a sale of property pursuant to the liquidation process proposed in the Plan; (4) United States Trustee's fees; and (5) any other Allowed Claims pursuant to Bankruptcy Code §503. S&O is expected to have an administrative claim for accrued attorneys' fees and costs from and after 11/1/18 estimated at $38,000 through the time of plan confirmation; provided, however, that if the Plan is timely confirmed within 60 days of the filing of this Disclosure Statement, Debtors' counsel will agree to accept (i) a $20,000 discount on its fees claim plus (ii) reimbursement of costs incurred.

<u>Impairment and Voting</u>. Class 1 is unimpaired by the Plan. Therefore, all holders of Allowed Class 1 Claims are deemed to have accepted the Plan.

<u>Distributions</u>. Allowed Claims in Class 1 shall be paid on the Effective Date or pursuant to any agreement between the holders thereof and the Debtors.

**Class 2: Priority Tax Claims.**

<u>Description of Class 2 Claims</u>. Class 2 consists of any and all Allowed Claims pursuant to Bankruptcy Code section 507(a)(8). The following priority claims have been

- 2 -
Case 2:17-bk-11886-BKM    Doc 221    Filed 03/29/19    Entered 03/29/19 10:29:41    Desc
Main Document    Page 2 of 19

filed: (i) Claim No. 1 listing a priority claim of the IRS in the amount of $22,337.07 (2015 and 2016 income taxes); and (ii) Claim No. 11 listing a priority claim of ADOR in the amount of $6,338.21 (for 2013, 2014, and 2016).[1] The Barsanos have filed their tax returns for 2015, 2016, and 2017. Class 2 priority claims are estimated to total approximately $28,675.25.

Impairment and Voting. Class 2 is impaired.

Distributions. Allowed Claims in Class 2 shall be paid from the Creditor Pool in full, with interest from the Petition Date at the lower of (i) the applicable statutory interest rate or (ii) 4.5% per annum, as provided in Code §1129(a)(9)C).

**Class 3: Barsano Secured Claims**

**Class 3A: JP Morgan Chase Bank, N.A. ("Chase")**

Description of Class 3 Claims. Class 3A consists of the Allowed Claim of Chase secured by a lien on the Barsanos' home. Chase has filed a Claim No. 6 in the amount of $323,917.00.[2]

Impairment and Voting. Class 3A is impaired.

Distributions. Class 3A shall receive on its Allowed Claim from the Barsanos payment in full from a sale of the Barsanos' home, with such sale to occur between 60 days and 270 days after entry of the Confirmation Order. Chase's lien shall attach to the sale proceeds, which shall be sufficient to fully pay Chase's Allowed Claim, including any postpetition interest. The precise amount payable to Chase shall be calculated to include all accrued interest and all other amounts owing to Chase pursuant to its loan documents through and including the payoff date.

**Class 3B: Claim of Isabel Castro.**

Description of Class 3 Claims. Class 3B consists of the Allowed Claim of Isabel Castro secured by a lien on the Barsanos' home. This claimant has a claim in the principal amount of $100,000 plus accrued interest thereon.

Impairment and Voting. Class 3B is impaired.

Distributions. Class 3B Claim shall receive on its Allowed Claim from the Barsanos payment in full from a sale of the Barsanos' home, with such sale to occur between 60 days and 270 days after entry of the Confirmation Order. Class 3B's lien shall attach to the sale proceeds, which shall be sufficient to fully pay its Allowed Claim, including any postpetition interest. The precise amount payable to Class 3B shall be

---

[1] The ADOR claim is in the amount of $6,558.96, but $220.75 of it is listed as a general unsecured claim.

[2] According to information previously provided by Chase, the payoff amount as of 3/5/19 was $315,273, together with interest accruing thereafter of $54.57 per day.

calculated to include all accrued interest and all other amounts owing to Class 3B pursuant to its loan documents through and including the payoff date.

**Class 3C: Claim of BMW Bank of North America ("BMW").**

Description of Class 3C Claims. Class 3C consists of the Allowed Secured Claim of BMW secured by the Barsanos' 2012 BMW. BMW has filed Claim No. 3 in the amount of $17,160.

Impairment and Voting. Class 3C is impaired.

Distributions. On or prior to plan confirmation, the Debtors shall notify counsel for BMS that it may repossess and sell its collateral. If and to the extent there is a deficiency claim remaining after the sale, such deficiency claim shall be treated as a Class 4 general unsecured claim. If and to the extents there is a surplus remaining after the sale and payable to the Debtors, any such surplus shall thereafter be deposited into the Creditor Pool.

**Class 3D: Townsgate Capital.**

Description of Class 3D Claims. Class 3D consists of the Allowed Secured Claim of Townsgate Capital secured by the Barsanos' Range Rover. According to the schedules, Townsgate's claim as of the Petition Date was $9,490 and is currently believed to be lower as a result of post-petition payments made thereon.

Impairment and Voting. Class 3D is impaired.

Distributions. The Debtors shall sell the collateral, with such sale to occur between 30 days and 90 days after entry of the Confirmation Order, and fully pay the Allowed Class 3D claim out of the proceeds of the sale of this claimant's collateral. Class 3D's lien shall attach to the sale proceeds, which shall be sufficient to fully pay its Allowed Claim, including any postpetition interest. The precise amount payable to Class 3D shall be calculated to include all accrued interest and all other amounts owing to Class 3D pursuant to its loan documents through and including the payoff date. Any net sale proceeds remaining after satisfaction of the lien shall be paid to the Debtors to the extent of, and not to exceed, their total combined exemption on all vehicles ($12,000); and any remaining balance shall thereafter be deposited into the Creditor Pool.

**Class 3E: Claim of George Nesemeier.**

Description of Class 3 Claims. Class 3E consists of the Allowed Claim of George Nesemeier secured by a lien on the Barsanos' Scottsdale lot. This claimant has a claim based on a loan in the principal amount of $100,000 plus accrued interest thereon.

Impairment and Voting. Class 3E is impaired.

Distributions. Class 3E Claim shall receive on its Allowed Claim from the Barsanos payment in full from a sale of the Scottsdale Lot, with such sale to occur within 270 days after entry of the Confirmation Order. Class 3E's lien shall attach to the sale proceeds, which shall be sufficient to fully pay its Allowed Claim, including any postpetition interest. The precise amount payable to Class 3E shall be calculated to include all accrued interest

and all other amounts owing to Class 3E pursuant to its loan documents through and including the payoff date.

**Class 4: General Unsecured Claims of the Barsanos**

<u>Description of Class 4 Claims</u>.   Class 4 consists of Allowed general Unsecured Claims of the Barsanos, including, without limitation, any Allowed Claims of (i) Wells Fargo Bank (Claim No. 7 for $2,530.14); (ii) Wells Fargo Bank (Claim No. 5 for $11,188.18); (iii) Wells Fargo Bank (Claim No. 4 for $36,651.96); (iv) Trident Ventures ($27,500 scheduled); (v) Honor Health ($1,397 scheduled); (vi); U.S. Department of Education (Claim No. 2 for $327,420.28); (vii) MCA Financial (Claim No. 8 for $26,945.12); (viii) Milligan Lawless (Claim No. 9 for $24,954.64); (ix) Gallagher & Kennedy (Claim No. 13 for $81,616.01); (x) Don Francone ($4,000 scheduled); (xi) Tiffany & Bosco ($16,708 scheduled); (xii) OPM 4 LLC ($51,935.17); (xiii) Sunil Wadhwa ($1,314.342.29); (xiv) CoolTrade ($75,000); (xv) LVNV Funding, LLC (Claim No. 10 for $8,436.64).

<u>Impairment and Voting</u>.   Class 4 is impaired.

<u>Distributions</u>.   Class 4 shall receive pro rata payments from the Creditor Pool after the payment in full of Classes 1 and 2 as set forth below in Article IV.

# ARTICLE III
# ACCEPTANCE OR REJECTION OF THE PLAN

3.1     <u>Classes Entitled to Vote</u>.  Classes which are impaired are entitled to vote.  An Impaired Class of Claims shall have accepted the Plan if, of the Claims actually voting, the holders (other than any holder designated under §1126(e) of the Bankruptcy Code) of at least two-thirds in amount of the Allowed Claims and more than fifty (50%) in number of the Allowed Claims have voted to accept the Plan.

3.2     <u>Cramdown.</u>  The Debtors may request Confirmation of the Plan, as it may be modified from time to time, under § 1129(b) of the Bankruptcy Code even if all Impaired Classes do not accept the Plan.

# ARTICLE IV
# MEANS FOR IMPLEMENTATION OF THE PLAN

4.1     <u>Implementation and Funding of the Plan</u>.  The Barsanos will liquidate all of their property, real and personal, that is not exempt under Arizona law and will complete this liquidation of their property no later than eighteen (18) months from the Effective Date of the Liquidating Plan (the "Termination Date"). In the event any non-exempt property of the Barsanos remains unliquidated as of the Termination Date, the Barsanos will put such property up for auction so that it is sold within forty-five (45) days of the Termination Date.  The proceeds of the liquidation of the Barsanos' non-exempt property (the "Liquidation Proceeds") will be distributed to creditors holding allowed claims in the Barsano Case according to the priorities established by the Bankruptcy Code.

4.2     The Barsanos will act as the distribution agents under the Plan and will make periodic distributions to creditors as are reasonable, provided, however, that the Barsanos

will make a distribution to creditors within thirty (30) days of the closing of the sale of (i) their residence and (ii) the Scottsdale lot; provided, however, that if either is sold before the Effective Date of the Liquidating Plan, then any such distribution shall occur within thirty (30) days of the Effective Date of the Liquidating Plan.

4.3 On and after the Effective Date, the Debtors shall be fully empowered and authorized (without further order of the Bankruptcy Court), to market for sale and/or to sell and/or dispose of the non-exempt property, and shall have the power and authority (without the need for a further hearing or order of the Bankruptcy Court) to sell directly or through an auctioneer and/or execute all contracts of sale and other documents necessary to effectuate the sale or disposition of the non-exempt property. Notwithstanding Bankruptcy Code §1141(b) or anything to the contrary contained in the Plan, all of the Debtors' non-exempt property shall remain property of the estate until the earlier of (i) such property's sale or (ii) the Termination Date.

4.4 A Creditor Pool shall be established for the benefit of creditors. All remaining funds and net proceeds ("Liquidation Proceeds) from the sale of the non-exempt property, after payment of applicable liens and exemptions thereon, shall be deposited into the Creditor Pool. It first shall be used to pay any Allowed Class 1 and 2 Claims. Thereafter, the holders of Allowed Claims in Class 4 shall receive their pro rata share of the remaining Liquidation Proceeds in the Creditor Pool. All distributions to secured creditors shall occur as sales occur.

4.5 <u>CoolTrade.</u> CoolTrade shall cease operations.

4.6 Notwithstanding the foregoing or anything contained in the Plan to the contrary:

1. Mr. Wadhwa's claim against the Barsanos will be allowed as a general unsecured claim allowed in the amount of $1,314,342.29 under Bankruptcy Code § 502 and shall receive a pro-rata distribution of that portion of the Liquidation Proceeds that general unsecured claims in the Barsano Case are entitled to receive based on the priority scheme established by the Bankruptcy Code. All payments to Mr. Wadhwa made pursuant to the Liquidating Plan shall be sent to his counsel of record, J. Henk Taylor, RYAN RAPP & UNDERWOOD, PLC, 3200 North Central Avenue, Suite 2250, Phoenix, Arizona 85012.

2. CoolTrade's claim against the Barsanos will be allowed as a general unsecured claim in the amount of $75,000 and receive a pro-rata distribution of that portion of the Liquidation Proceeds that general unsecured claims in the Barsano Case are entitled to receive based on the priority scheme established by the Bankruptcy Code.

3. The holders of Allowed Class 4 claims shall not receive more than payment in full of their Allowed Claims.

4. Mr. Barsano is at or near retirement age, and the Debtors may not have projected disposable income (as that term applies to individual filings under Bankruptcy Code Chapters 11 and 13) after entry of the confirmation order. This does not affect the feasibility of the Plan, however, as the Plan is not to be funded with projected disposable income.

5. Upon distribution of the Liquidation Proceeds in accordance with the Plan, the Barsanos will be entitled to seek entry of an order discharging their debts on the terms set forth in Bankruptcy Code § 1141(d)(5).

The Barsanos' failure to pay any Class 3 Allowed Claim in accordance with its treatment shall constitute a "Default." In the event of a Default, the holder of the Class 3 Allowed Claim shall be entitled to enforce its rights in its collateral.

The Debtors' failure to make any other payment or distribution under the Plan within sixty (60) days after its due date shall (unless the Debtors and the affected creditor(s) agree to delayed payment) under the Plan shall constitute a "Plan Default." In the event of a Plan Default, any adversely affected creditors may (i) file suit against the Debtors for breach of their obligations under the Plan or (ii) request that this Case be converted to a Chapter 7 case.

4.7 Executory Contracts. Any executory contracts in existence as of the Petition Date which are not assumed pursuant to the Plan or an express order of the bankruptcy court shall be deemed rejected.

4.8 Preservation of Rights of Action. Except as otherwise provided in the Plan the Confirmation Order, or any court-approved settlement, the Debtor may, without Bankruptcy Court approval, enforce, sue on, settle, or compromise (or decline to do any of the foregoing) all claims, rights, or causes of actions, suits, and proceedings, whether in law or in equity, known or unknown, that the Debtors and/or the Estate may hold against any person or entity.

4.9 Effectuating Documents; Further Transactions. On or before the Effective Date, the Debtors are authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. After the Effective Date, the Debtors and Claimants shall execute such documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

4.10 Litigation Claims. All Litigation Claims are preserved for the benefit of the

Debtors.

## ARTICLE V
## GENERAL PROCEDURES FOR OBJECTING TO CLAIMS AND RESOLVING AND TREATING CONTESTED, DUPLICATE, AND CONTINGENT CLAIMS

5.1     <u>Claim Objection Deadline.</u>  All objections to Claims shall be filed with the Clerk of the Bankruptcy Court and served on the holders of such Claims (unless earlier filed) no later than 60 days after the Effective Date.  If an objection has not been filed to a Claim by the deadlines established herein, the Claim shall be treated as an Allowed Claim, provided, however, that no objection shall be required if a Claim was not listed on the Schedules or was listed on the Schedules as disputed, contingent or unliquidated and was not evidenced by a timely filed proof of Claim.  No such unlisted, disputed, contingent, unliquidated or unfiled Claim shall be treated as an Allowed Claim, except pursuant to a Final Order so providing.  The objection deadlines established herein shall not apply to Claims and causes of action that must be asserted through an adversary proceeding.

5.2     <u>Preservation of Objections to Claims</u>.  Except as otherwise provided in the Plan or in the Confirmation Order or other Final Order, no compromise, waiver or release of Claims, demands or causes of action, that may be provided for in the Plan or in any Final Order of the Court shall, in any way, limit or impair the right of the Debtors to prosecute objections to Claims, and the Debtors hereby retain all objections to Claims and all defenses associated with such objections.

5.3     <u>No Distributions Pending Resolution of Objections</u>.  Notwithstanding any other provision of the Plan, no distributions shall be made with respect to a Claim (or any contested portion of a Claim, if such Claim is not severable) contested by either of the Debtors unless and until all objections to such contested Claim has been determined by Final Order and the Claim is determined to be Allowed.

5.4     <u>Interest</u>.  No interest shall accrue after the Petition Date on any general unsecured claims.  No interest shall accrue on any other type of Claim which is a contested Claim during the period from the Effective Date until the date on which the Claim is allowed, if ever, and no interest shall accrue on any other type of Claim which is contingent during the period from the Effective Date until the date on which the Claim becomes fixed and absolute or is otherwise Allowed.

5.5     <u>Treatment Of Duplicate Claims</u>.  A claimant who has filed more than one claim for the same amount shall only be entitled to receive a Plan distribution based upon one Allowed Claim – not two.

5.6     <u>Treatment Of Contingent Claims</u>.  Until such time as a contingent Claim or a contingent portion of an Allowed Claim becomes fixed and absolute or is disallowed, such

Claim shall be treated as a contested Claim for all purposes related to the distributions under the Plan; provided, however, that the distribution entitlements shall arise only from the date on which a contingent Claim becomes fixed and absolute or is otherwise allowed.

5.7     Disallowance Of Post-Petition Additions.  The Debtors shall not be required to make specific objection to proofs of Claim that allege a right to recover post-petition interest, penalties, fees, attorneys' fees, collection fees, exemplary or punitive damages, late fees and other accruals with respect to pre-petition Claims (except Secured Claims entitled to such accruals pursuant to § 506(b) of the Bankruptcy Code), and any Claim amounts attributable to such shall be disallowed in full upon entry of the Confirmation Order, automatically, without the need for the filing of an objection to the Claim.

5.8     Barring Of Claims.  The entry of the Confirmation Order shall permanently bar the filing and assertion of any Claims against the Debtors which arose or relate to the period of time prior to the Confirmation Date; which were not listed by the Debtors in the Schedules filed with the Court (or were designated as "contingent," "unliquidated," "subject to adjustment," "disputed," "unknown," or assigned a zero amount); or which were not evidenced by timely-filed and proper proofs of Claim filed with the Court.

## ARTICLE VI. GENERAL PROVISIONS

6.1     Prohibition Against Discriminatory Treatment Against The Debtors.  No individual, entity or government may discriminate against the Debtors solely because of the commencement, continuation or termination of this Bankruptcy Case, or because of any provision of the Plan, or the legal effect of the Plan, and the Confirmation Order shall constitute an express injunction against such discriminating treatment.

6.2     Compliance with Tax Requirements.  In connection with the Plan, Debtors shall comply with all withholding and reporting requirements imposed by federal, state and local taxing authorities.

6.3     Insurance.  The Debtors shall use their best efforts to maintain insurance on all of its property sufficient to cover the value of the property insured.

6.4     Remedies to Cure Defects.  After Confirmation, the Debtors may, with the approval of the Court, and so long as it does not materially and/or adversely affect the interest of Creditors, remedy any defect or omission, or reconcile any inconsistencies in the Plan or in the Confirmation of the Plan, in such a manner as may be necessary to carry out the purposes and the intent of the Plan.

6.5     Retention Of Jurisdiction.  After the Effective Date, the Bankruptcy Court shall retain and have exclusive jurisdiction over the Bankruptcy Case for the following purposes:To determine any and all objections to the allowance of Claims;

(b) To determine any and all applications for allowances of compensation and reimbursement of expenses and any other fees and expenses authorized to be paid or reimbursed under the Bankruptcy Code or the Plan;

(c) To determine any applications for the rejection or assumption of Executory contracts or unexpired leases or for the assumption and assignment, as the case may be, of Executory contracts or unexpired leases to which either Debtor is a party or with respect to which either Debtor may be liable, and to hear and determine, and if need be, to liquidate any and all Claims arising therefrom;

(d) To determine any and all applications, adversary proceedings and contested or litigated matters pending on the Effective Date;

(e) To consider any modifications of the Plan, remedy any defect or omission or reconcile any inconsistency in any order of the Bankruptcy Court, including the Confirmation Order;

(f) To determine any and all controversies, suits and disputes that may arise in connection with the interpretation, enforcement or consummation of the Plan or any person's or entity's obligations thereunder;

(g) To determine all controversies, suits and disputes arising as a result of a demand by any utility for a deposit or other form of security as a condition to providing post-confirmation utility services to either Debtor;

(h) To enter an order granting the Debtors a discharge on their debts;

(i) To hear and determine any claim or cause of action by or against either Debtor, and to consider and act on the compromise and settlement of any claim or cause of action by or against either Debtor;

(j) To issue such orders in aid of execution of the Plan, as are authorized by § 1142 of the Bankruptcy Code; and

(k) To determine such other matters as may be set forth in the Confirmation Order or as may arise in connection with the Plan or the Confirmation Order.

(l) Nothing in this retention of jurisdiction shall prevent the Court from entering an order of Final Decree when performance under the Plan has been substantially consummated.

(m) To interpret Orders entered in this case during its administration and confirmation of the Plan.

6.6 <u>Modification Of Plan</u>. Modifications of the Plan may be proposed in writing by either Debtor at any time before Confirmation, provided that the Plan, as modified, meets the requirements of §§ 1122 and 1123 of the Bankruptcy Code, and such Debtor shall have complied with § 1125 of the Bankruptcy Code. The Plan may be modified at

any time after Confirmation and before its substantial consummation, provided that the Plan, as modified, meets the requirements of §§ 1122 and 1123 of the Bankruptcy Code and the Bankruptcy Court, after notice and hearing, confirms the Plan, as modified, under § 1129 of the Bankruptcy Code, and the circumstances warrant such modification. A holder of a Claim that has accepted or rejected the Plan shall be deemed to have accepted or rejected, as the case may be, such Plan as modified, unless within the time fixed by the Bankruptcy Court, such holder changes its previous acceptance or rejection.

6.7     Modification Of Plan Due To Default. If any Creditor holding an Allowed Claim seeks such an Order, either Debtor may seek modification of the Plan prior to entry of the Order based upon good cause for the default and reasonableness of the modification.

6.8     Severability. Wherever possible, each provision of the Plan shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of the Plan shall be prohibited by or invalid under applicable law, such provision shall be ineffective to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of the Plan. Furthermore, if the Bankruptcy Court will not confirm the Plan because one or more provisions hereof are determined to be prohibited or invalid under applicable law, either Debtor may seek permission of the Bankruptcy Court to amend the Plan by deleting the offending provision.

6.9     Revocation Of Plan. The Debtors reserve the right to revoke and/or withdraw the Plan prior to entry of the Confirmation Order. If the Debtors revoke and/or withdraw the Plan, or if Confirmation of the Plan does not occur, then the Plan shall be deemed null and void and nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against Debtors or any other person or entity or to prejudice in any manner the rights of Debtors or any person or entity in any further proceeding involving

6.10    Debtors.Unclaimed Monies. All distribution of money under the Plan which is returned by the Post Office undelivered or which cannot be delivered due to lack of a current address will be retained by the Debtors, in trust, in a federally insured bank for the distributee. After the expiration of six months from the postmark date of the first attempted distribution, the unclaimed monies, stock, and all future distributions will vest in the Reorganized Debtors, free of any claim by the creditor.

6.11    Post Confirmation Fees To The United States Trustee. After Confirmation of the Plan, the Debtors shall pay quarterly fees to the United States Trustee as required by 28 U.S.C. § 1930 as long as such fees are required to be paid.

6.12    Post Confirmation Financial Reports. The Debtors shall file post-confirmation financial reports on a quarterly basis, also sending a copy to the Office of the United States Trustee, as long as such reports are required to be filed but no longer than the time up to the time the Final Decree is entered.

6.13    Exculpation and Limitation on Liability. Neither the Debtors, nor any of their advisors, attorneys, or agents, shall have or incur any liability to any holder of a Claim, or any other party in interest, or any of their respective agents, employees, representatives, financial advisors, attorneys, or affiliates, or any of their successors or assigns, for any post-petition act or omission in connection with, relating to, or arising out

of, the Chapter 11 Cases, the solicitation of acceptances of the Plan, the pursuit of confirmation of the Plan, the consummation of the Plan, or the administration of the Estate or of the Plan or the property to be distributed under the Plan, other than acts of intentional or willful misconduct, including fraud, breach of fiduciary duty, and knowing misrepresentation. Nothing contained herein is intended to limit the creditors' rights and remedies under the Plan in the event of a default under the Plan.

6.14 <u>Binding Effect of Confirmation</u>. From and after the Effective Date, the Plan will be binding upon the Debtors, and all present and former holders of Claims against the Debtors (whether or not such holders will receive or retain any property or interest in property under the Plan), their respective successors and assigns.

6.15 <u>Permanent Injunction on and after the Effective Date</u>. Except as otherwise expressly provided in the Plan or the Confirmation Order, all entities who have held, hold or may hold Claims against the Debtors will be permanently enjoined, on and after the Effective Date, from (i) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against the property of the Debtors or the Estate or the proceeds of such property; (ii) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from the Debtors or against the property or interests in property of the Debtors on account of any such Claim. This injunction provision shall apply for the duration of the Plan Term to any holders of non-dischargeable debts which will not be fully paid under the Plan. Any claimants with liens on property of the Debtors or the Estate (or the proceeds thereof) whose claims are being treated as entirely unsecured and who are receiving Plan distributions as holders of Unsecured Claims shall no longer have a lien on such property and shall be permanently enjoined, on and after the Effective Date, from taking any action to enforce any such liens.

Under Bankruptcy Code section 1141(d)(5), an individual Debtor will not be discharged from any debts unless and until: (i) Debtor completes all payments under the Plan and obtains an order of the Bankruptcy Court granting a discharge; (ii) the Bankruptcy Court grants a limited ("hardship") discharge as allowed under Bankruptcy Code section 1141(d)(5)(B); or (iii) the Bankruptcy Court orders otherwise for cause. The Barsanos shall not be discharged from any categories of claims against them as set forth in the Plan until ordered by the Bankruptcy Court pursuant to one of the reasons set forth above, including after they seek entry of an order discharging their debts upon distribution of the Liquidation Proceeds in accordance with the Plan. Any debts against the Barsanos which are non-dischargeable under Bankruptcy Code section 523 will not be discharged; and the holders of any such claims shall retain the right to enforce their state law remedies after the Plan Term.

# ARTICLE VII.

# DEFINITIONS, RULES OF CONSTRUCTION, AND COMPUTATION OF TIME

7.1 Defined Terms. For purposes of this Plan, except as otherwise expressly provided in the Plan or unless the context otherwise requires, all capitalized terms used in this Plan shall have the meanings ascribed to them below.

7.1.1 <u>Administrative Expense Claims</u> means claims and expenses which are allowed pursuant to § 503(b) of the Bankruptcy Code and which are entitled to priority pursuant to § 507(a)(1) of the Bankruptcy Code.

7.1.2 <u>Affiliates</u> shall have the same meaning as defined by the Bankruptcy Code at Code §101(2).

7.1.3 <u>Allowed Claim</u> means a Claim (a) with respect to which a Proof of Claim has been filed with the Court within the applicable period of limitation fixed by the Federal Rules of Bankruptcy Procedure, Rule 3003, or (b) scheduled in the list of Creditors prepared and filed with the Court pursuant to Federal Rules of Bankruptcy Procedure, Rule 1007(b) and not listed as disputed, contingent or unliquidated as to amount, and in either case, as to which no objection to the allowance thereof has been filed within any applicable period of limitation fixed by Federal Rules of Bankruptcy Procedure, Rule 3007, the Plan, an order of the Court, or as to which any such objection has been determined by an order or judgment which is no longer subject to appeal and as to which no appeal is pending. An Allowed Claim shall not include unmatured or post-petition interest unless otherwise provided in the Plan.

7.1.4 <u>Allowed Secured Claim</u> means a Claim that is both an Allowed Claim and a Secured Claim.

7.1.5 <u>Allowed Unsecured Claim</u> means a Claim that is both an Allowed Claim and an Unsecured Claim.

7.1.6 <u>Avoidance Actions</u> means a lawsuit commenced pursuant to Bankruptcy Code §§547, 548, 549, and/or 550 to recover for the benefit of the Estate, a transfer of property to a third party.

7.1.7 <u>Ballot</u> means the ballot for accepting or rejecting the Plan which will be distributed to holders of Claims in Classes that are impaired under this Plan and are entitled to vote on this Plan.

7.1.8 <u>Bankruptcy Code</u> means the Bankruptcy Reform Act Of 1978, sometimes referred to as the Bankruptcy Code Of 1978, as contained in Title 11 U.S.C.A. § 101, et seq., and all amendments thereto.

7.1.9 <u>Bankruptcy Court</u> means the United States Bankruptcy Court for the District of Arizona, Phoenix Division, or any other court that exercises jurisdiction over all or part of the Bankruptcy Case, including the United States District Court for the District of Arizona to the extent that the reference of all or part of the Bankruptcy Case is

Case 2:17-bk-11886-BKM    Doc 221    Filed 03/29/19    Entered 03/29/19 10:29:41    Desc
Main Document    Page 13 of 19

withdrawn.

       7.1.10    <u>Bankruptcy Rules</u> means the Federal Rules of Bankruptcy Procedure promulgated under 28 U.S.C. § 2075 and the local rules of Court, as applicable during the term of the Bankruptcy Case.

       7.1.11    <u>Bankruptcy Case or Cases</u> means the above-captioned jointly-administered Chapter 11 cases.

       7.1.12    <u>Bar Date</u> means the last day the Court will allow a Proof of Claim to be filed in this bankruptcy proceeding. The Bar Date is usually the date set for the hearing on approval of the Disclosure Statement and notice of the Bar Date will accompany the notice setting the hearing on approval of the Disclosure Statement, unless another deadline has been set by the Court.

       7.1.13    <u>Business Day</u> means every day except Saturdays, Sundays, and holidays observed by the Bankruptcy Court.

       7.1.14    <u>Cash</u> means any legal tender of the United States.

       7.1.15    <u>Cash Collateral</u> means cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, rents, or profits of property subject to a security interest as provided in § 552(b) of the Bankruptcy Code, whether existing before or after the commencement of a case under Title 11 of the Bankruptcy Code.

       7.1.16    <u>Causes of Action</u> means any and all actions, proceedings, causes of action, suits, accounts, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payment and claims (as defined in Section 101(5) of the Bankruptcy Code), whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured and whether asserted or assertable directly or derivatively, in law, equity or otherwise.

       7.1.17    <u>Chapter 11</u> means sections in the Bankruptcy Code 11 U.S.C. § 101, et seq., Public Law 95-598, effective October 1, 1979, as amended, unless otherwise specified.

       7.1.18    <u>Claim</u> means a right of any Person to (1) payment from the Debtors, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or (2) an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

       7.1.19    <u>Claimant</u> means a holder of a Claim.

       7.1.20    <u>Class</u> means one or more creditors grouped together as defined herein. The Plan is intended to deal with all Claims against the Debtors of whatever

character, whether or not contingent or liquidated, and whether or not allowed by the Court pursuant to § 502(a) of the Bankruptcy Code. However, only those Claims allowed pursuant to § 502(a) of the Bankruptcy Code will receive payment under the Plan.

7.1.21 <u>Collateral</u> means property which is pledged as security for the satisfaction of a debt.

7.1.22 <u>Collateral Value</u> means the fair market value of any collateral as determined by the Court.

7.1.23 <u>Confirmation</u> means the formal approval of the Bankruptcy Court of a Plan of Reorganization.

7.1.24 <u>Confirmation Date</u> means the date upon which the Confirmation Order is entered by the Court.

7.1.25 <u>Confirmation Hearing</u> means the hearing regarding confirmation of the Plan conducted by the Bankruptcy Court pursuant to Bankruptcy Code § 1128, including any adjournment or continuation of that hearing from time to time.

7.1.26 <u>Confirmation Order</u> means the Final Order of the Court determining that the Plan meets the requirements of Chapter 11 of the Bankruptcy Code and is entitled to Confirmation.

7.1.27 <u>Creditor</u> means a person or entity holding a Claim against the Debtors for the debts, liabilities, demands or Claims of any character whatsoever, as defined in § 101(4) of the Bankruptcy Code.

7.1.28 <u>Creditors' Committee</u> means the Official Committee of Unsecured Creditors appointed, if one was appointed, pursuant to Section 1102(a) of the Bankruptcy Code.

7.1.29 <u>Creditor Pool</u> means the fund in which the Debtors will deposit the net sale proceeds as and to the extent required by Article IV of the Plan.

7.1.30 <u>Cure</u> means the distribution of Cash, or such other property as may be agreed upon by the parties or ordered by the Bankruptcy Court, with respect to the assumption of an executory contract or unexpired lease, pursuant to Section 365(b) of the Bankruptcy Code, in an amount equal to all unpaid monetary obligations, without interest, or such other amount as may be agreed upon by the parties, under such executory contract or unexpired lease, to the extent such obligations are enforceable under the Bankruptcy Code and applicable non-bankruptcy law.

7.1.31 <u>Debtors</u> mean Edward and Jeanne Barsano.

7.1.32 <u>Deficiency Claim</u> means an Unsecured Claim against the Debtors which amounts to the difference between the amount of a Secured Claim as timely filed and allowed by the Court and the value of the Secured Creditor's Collateral.

7.1.33 <u>Disallowed Claim</u> means a claim or any portion thereof, that (a) has been disallowed by a Final Order, (b) is Scheduled at zero or as contingent, disputed or

- 15 -
Case 2:17-bk-11886-BKM   Doc 221   Filed 03/29/19   Entered 03/29/19 10:29:41   Desc
Main Document    Page 15 of 19

unliquidated and as to which a proof of claim or interest bar date has been established but no proof of claim or interest has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely filed under applicable law, or (c) is not Scheduled and as to which a proof of claim or interest bar date has been set but no proof of claim or interest has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely filed under applicable law.

   7.1.34  <u>Disclosure Statement</u> means the Disclosure Statement filed in support of the Plan as it may be amended or supplemented.

   7.1.35  <u>Disputed Claim</u> means every Claim: (a) that is scheduled by the Debtors as disputed, contingent, or unliquidated; and/or (b) that is not an Allowed Claim.

   7.1.36  <u>Effective Date</u> means the date that is thirty (30) days following the Confirmation Date.

   7.1.37  <u>Equity Interest</u> or Interest Holder means the interest held by either of the Debtors.

   7.1.38  <u>Estates</u> means the bankruptcy estates of the Debtors created under Bankruptcy Code § 541.

   7.1.39  <u>Executory Contract</u> means every unexpired lease and other contract which is subject to being assumed or rejected under Bankruptcy Code § 365.

   7.1.40  <u>Exhibit</u> means any document attached to either this Plan or attached as an appendix to the Disclosure Statement.

   7.1.41  <u>Final Order</u> means an order of the Bankruptcy Court which, not having been reversed, modified or amended and not being stayed and the time to appeal from which or to seek review or rehearing of which having expired, and no such appeal, review, certiorari or rehearing is pending, has become conclusive of all matters adjudicated thereby and in full force and effect.

   7.1.42  <u>Impaired/Impaired Class</u> means, under § 1124 of the Bankruptcy Code, a Class Of Claims is impaired under a Plan unless, with respect to each Claim of such Class: (i) it is paid in full on the Effective Date of the Plan; (ii) the Plan leaves unaltered the legal, equitable and contractual rights to which such Claim entitles the holder to such Claim; or (iii) all defaults are cured, the original maturity of the Claim is reinstated and the Claim is otherwise treated as provided in clause (ii) above.

   7.1.43  <u>IRS</u> means the Internal Revenue Service.

   7.1.44  <u>Lien</u> means a lien as described in Section 101(37) of the Bankruptcy Code except for a lien that has been avoided in accordance with Sections 544, 545, 546, 547, 548, or 549 of the Bankruptcy Code.

   7.1.45  <u>Litigation Claims</u> means all rights, claims, torts, liens, liabilities, obligations, actions, causes of action, avoidance actions, avoiding powers, proceedings,

debts, contracts, judgments, offsets, damages and demands whatsoever in law or in equity whether known or unknown, contingent or otherwise that either Debtor may have against any person. This includes, but is not limited to, the claims discussed in the Disclosure Statement.

       7.1.46     <u>Person</u> means an individual, corporation, partnership, joint venture, association, joint stock company, limited liability company, limited liability partnership, trust, estate, unincorporated organization, governmental unit (as defined in Section 101(27) of the Bankruptcy Code), or other entity (including, without limitation, the Creditors' Committee).

       7.1.47     <u>Petition Date</u> means October 6, 2017, the dates on which the Debtors filed their voluntary petitions.

       7.1.48     <u>Personal Property</u> means all personal property owned by the Debtors.

       7.1.49     <u>Plan</u> means this Joint Plan of Reorganization propounded by Debtors and every modification thereof.

       7.1.50     <u>Plan Confirmation</u> means the entry by the Court of an order confirming the Plan.

       7.1.51     <u>Preserved Lien(s)</u> means any Lien required under § 1124(2) of the Bankruptcy Code.

       7.1.52     <u>Property</u> means all real and personal Property (individually or as a whole) of the Estate of the Debtors as previously or hereafter determined by Final Order of a court of competent jurisdiction and/or as defined in § 541 of the Bankruptcy Code, including, but not limited to, any and all claims or causes of action in favor of the Debtors against third parties (except as otherwise provided herein).

       7.1.53     <u>Proponents</u> means the Debtors, who are proposing the Plan.

       7.1.54     <u>Pro Rata</u> means proportionally, so that the ratio of the consideration distributed on account of an Allowed Claim in the Class (or sub-class) and consideration distributed on account of all Allowed Claims in the Class (or sub-class) is the same as the ratio of the Allowed Claims in the Class (or sub-class).

       7.1.55     <u>Real Property</u> means all real property or real estate.

       7.1.56     <u>Reorganized Debtors</u> means the Debtors, after Confirmation of the Plan, and its successors and assigns.

       7.1.57     <u>Scheduled</u> means any Claim or Interest, the status, priority and amount, if any, of such Claim or Interest as set forth in the Schedules.

       7.1.58     <u>Schedules</u> means the schedules of assets and liabilities and the statement of affairs filed in the Chapter 11 case by the Debtors, as such schedules or statement has been or may be amended or supplemented from time to time in accordance with Bankruptcy Rule 1009 or orders of the Bankruptcy Court.

7.1.59   Secured Claim(s) means any Claim, other than a Tax Claim, secured by Property of the Debtors under a duly perfected security interest, to the extent of the value of the Collateral (security), as determined in accordance with § 506 of the Bankruptcy Code.

7.1.60   Secured Creditor(s) means any Creditor(s), other than taxing entities, who holds a Lien, security interest or other encumbrance which has been properly perfected as required by law with respect to Property owned by the Debtors.

7.1.61   Subordinated Claims means those Claims which are subordinated to all other Allowed Claims.

7.1.62   Term of the Plan means that period after the Effective Date during which payments are being made pursuant to the Plan.

7.1.63   Unsecured Claim(s) means any Claims not secured by collateral of the Estate.

7.1.64   Unsecured Creditor(s) means any creditor(s) of the Debtors holding Unsecured Claims of any character whatsoever, except Claims entitled to priority pursuant to § 507 of the Bankruptcy Code.

7.2   Undefined Terms. Terms and phrases, whether capitalized or not, that are used and not defined herein, but are defined by the Bankruptcy Code, have the meanings ascribed to them in the Bankruptcy Code. Terms and phrases, whether capitalized or not, not defined herein and not defined by the Bankruptcy Code, but which have been defined by motions and orders filed in this Chapter 11 case have the meaning ascribed to them in such motions and orders.

7.3   Rules of Interpretation. For purposes of this Plan: (a) any reference in the Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that it shall be substantially in such form or substantially on such terms and conditions; (b) any reference in the Plan to an existing document or exhibit filed or to be filed means such document or exhibit as it may have been or may be amended, modified, or supplemented; (c) unless otherwise specified, all references in the Plan to Sections, Articles, Appendices, Schedules, and Exhibits are to the Sections, Articles, Appendices, Schedules, and Exhibits of or to the Plan; (d) the words "herein" or "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (e) the headings and captions used in this Plan are for convenience and reference only and are not intended to be a part of or affect the interpretation of the Plan and shall not limit or otherwise affect the provisions hereof; (f) words denoting the singular number shall include the plural number and vice versa; (g) words denoting one gender shall include the other gender; and (h) the rules of construction set forth in Section 102 of the Bankruptcy Code and in the Bankruptcy Rules shall apply.

7.4   Computation of Time. In computing any period of time prescribed by or

allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

Dated as of March 28, 2019.

SCHNEIDER & ONOFRY, P.C.

By  /s/ *Brian N. Spector*
    Brian N. Spector
    Attorneys for Debtors Barsano